UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| JEFFERY RICHARDSON and COLBY RICHARDSON, | |
|---|---|
| Plaintiffs, | Civ. No. 16-135 (KM)(JBC) |
| v. | OPINION |
| STATE OF NEW JERSEY, JAMEL SEMPER, and NICHOLAS ORIOLO, | |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiffs, Jeffery Richardson and Colby Richardson, filed a complaint under 42 U.S.C. § 1983 alleging violations of their federal and state constitutional rights and asserting that defendants committed intentional torts against them. The complaint arises from plaintiffs' arrest and prosecution in connection with the December 15, 2013 shooting death of Naeem Williams. Defendants are the State of New Jersey, the Essex County Assistant Prosecutor Jamel Semper, and Detective Nicholas Oriolo.

When the complaint was filed, the state criminal case was still ongoing. On May 31, 2016, defendants moved to dismiss the complaint. (DE 10). In the alternative, defendants moved to stay this action pending the outcome of the state criminal proceeding. On October 15, 2016, I granted the stay, granted the motion to dismiss with respect to the injunctive relief, and administratively terminated the motion to dismiss without prejudice to renewal after the expiration of the stay. (DE 22).

On July 9, 2018, plaintiffs moved for leave to file an amended complaint and moved to vacate the stay. (DE 23). Plaintiffs attached to their motion a copy of the judgment of acquittal in connection with the December 15, 2013 incident. (DE 23-1). On September 19, 2018, Judge Clark vacated the stay and

1

granted plaintiffs' motion to file an amended complaint. (DE 25). On January 22, 2019, plaintiffs then filed an amended complaint. (DE 34).

Assistant Prosecutor Semper now moves to dismiss the amended complaint because of the immunity afforded to prosecutors when they are performing essential prosecutorial functions.[1] (DE 39). Plaintiffs oppose that motion. (DE 44).

For the reasons explained herein, I will grant AP Semper's motion to dismiss.

## I. Summary[2]

The allegations of the amended complaint are assumed to be true for purposes of this motion only. I summarize them as follows.

The amended complaint alleges that on December 15, 2013 at approximately 7:34 p.m., there was a shooting near the intersection of Elizabeth Avenue and Clinton Avenue in Newark. (AC ¶ 15). There was a surveillance video, which DSG Oriolo obtained two days later and reviewed. (*Id.* ¶ 17). The surveillance appears to show two individuals targeting two other individuals who are standing near an Exxon gas station. (*Id.* ¶ 18). A week later, Oriolo obtained additional surveillance footage from December 5, 2013. (*Id.* ¶ 19). This time, the footage showed plaintiffs standing outside of a grocery store, Luisa Grocery, located at 123 Elizabeth Avenue. (*Id.*) The video shows plaintiffs standing at this location from 5 p.m. to 9 p.m. (*Id.*). Oriolo then obtained two witness statements which did not match the surveillance video.

---

[1] The notice of motion refers to "Defendants'" (plural) motion to dismiss. The only substantive argument, however, is asserted on behalf of AP Semper.

[2] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"AC" = The amended complaint filed by plaintiffs (DE 34).

"DBr." = Jamel Semper's motion to dismiss (DE 39).

"PBr." = Plaintiffs' opposition to the motion to dismiss (DE 44).

2

(*Id.* ¶¶ 21–23; 30–37). One witness, Kamika Erby, stated that she was standing by a bus stop near the incident on Clinton Avenue at the time of the shooting; the surveillance video, however, shows no one standing in that location at the time of the shooting. (*Id.* ¶ 31). The second witness, Jennifer Gilbert (who was also a victim of the shooting) stated that both plaintiffs shot her. (*Id.* ¶ 33). The surveillance video is inconsistent, in that it shows that each of the shooters targeted only one individual. (*Id.* ¶ 18).

Nevertheless, Oriolo used these witnesses' inaccurate statements in preparing a criminal complaint and applying for arrest warrants. (*Id.* ¶ 24). As a result, on February 10, 2014, the plaintiffs were arrested. (*Id.* ¶ 25).

On June 6, 2014, AP Semper and DSG Oriolo together used the allegedly false statements of the two witnesses and Oriolo's own allegedly false testimony to obtain a grand jury indictment. (*Id.* ¶¶ 46–49). The amended complaint alleges that AP Semper used the two witnesses' allegedly perjured statements before the grand jury. (*Id.* ¶ 46). Semper also purportedly withheld exculpatory surveillance footage from the grand jury and allowed Oriolo to present his false testimony to the grand jury. (*Id.* ¶¶ 47–48).

In October 2017, plaintiffs were tried, but the proceeding ended in a declaration of mistrial. (*Id.* ¶ 26). A second trial was held and on June 25, 2018, plaintiffs were acquitted. (*Id.* ¶¶ 27–28).

The amended complaint cites 42 U.S.C. § 1983, and asserts a variety of claims under the U.S. Constitution, the New Jersey State Constitution, and asserts various tort claims:

    Count 1 – Violation of 4th Amendment (Oriolo)

    Count 2 – Violation of 14th Amendment (Oriolo)

    Count 3 – Violations of 5th and 14th Amendments (Semper)

    Count 4 – Malicious Prosecution (all defendants)

    Count 5 – Intentional Infliction of Emotional Distress (all defendants)

    Count 6 – Compensatory damages

    Count 7 – Defamation (all defendants)

Count 8 – Punitive/Exemplary damages

Count 9 – Declaratory Relief (return of personal property)

Because the movant, AP Semper, is named only in Counts 3, 4, 5, and 7, I focus on those counts.[3]

The complaint seeks $18 million in damages and seeks an order requiring the Essex County Prosecutor's Office to return Jeffery Richardson's confiscated phone.

## II. Legal Standard on Motion to Dismiss

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief" (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570. *See also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

---

[3] Count 6 (Compensatory Damages) and Count 8 (Punitive Damages) are remedies—not causes of action in themselves. *See, e.g.*, *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000). As such, they would be relevant only if some underlying cause of action survived this motion to dismiss. Count 9, seeking a declaration that plaintiff is entitled to return of a seized iPhone, seems to be directed at the State or the County Prosecutor's office; there is no allegation that defendant Semper in particular possessed the phone.

4

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

For purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). "Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief." *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) (citation and internal quotation marks omitted).

In considering a motion to dismiss a *pro se* complaint, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice . . . keeping in mind that *pro se* complaints in particular should be construed liberally." (citations omitted)). This does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'").

### III. Discussion: Federal Claims

#### a. Eleventh Amendment and "Persons" Under § 1983

Assistant Prosecutor Semper was employed by the Essex County Prosecutor's Office when the actions complained of by plaintiffs occurred. A threshold issue is whether the claims arose from actions taken in Semper's

5

official capacity such that he functioned as an agent of the state. To the extent he acted as a State agent, plaintiffs cannot maintain a federal court action against him in his official capacity.

The sovereign immunity conferred by the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" over states that have not consented to suit. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98–100 (1984)). This immunity extends to cases against state officials in their official capacities where it is shown that the state is the "real party in interest." *Edelman v. Jordan*, 415 U.S. 651, 662 (1974); *see also Antonelli v. New Jersey*, 310 F.Supp.2d 700, 712 (D.N.J. 2004) (noting that "[s]overeign immunity is routinely extended to ... state officials acting in their official capacities where it is show that the state is the real, substantial party in interest"), *aff'd* 419 F.3d 267 (3d Cir. 2005)). In determining whether the state is the real party interest, Courts consider "the source of the of the money that would pay the judgment," "the status of the entity under state law," and "the entity's degree of autonomy." *Haybarger v. Lawrence County Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)).

The Third Circuit has held that an action against a county prosecutor in his official capacity amounts to a suit against the state. *See Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 836–37 (3d Cir. 2009). County prosecutors serve as "agents of the state," and, if they are found to have engaged in misconduct, the state "would be liable for any judgment against them." *Id.* (citing *Wright v. State*, 169 N.J. 422, 778 A.2d 443, 461–62, 464 (2001)); *see also Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir. 1981) (stating that a suit that seeks damages against a state official for actions taken in her official capacity functions as a suit against the state because "such retrospective relief necessarily depletes the state treasury"). Accordingly, the Eleventh Amendment bars federal courts from hearing such actions. *Hyatt*, 340 F. App'x at 837.

As to Section 1983 in particular, there is another issue that is parallel to, and customarily analyzed together with, Eleventh Amendment immunity. I refer to the issue of who or what is a suable "person" under section 1983. Section 1983 imposes liability on "[e]very person who, acting under color of any statute, ordinance, regulation, custom, or usage, of any State" subjects a person to a deprivation of certain rights. 42 U.S.C. § 1983 (emphasis added). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Also barred are Section 1983 suits for damages against "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes," which are "no different from a suit against the State itself." *Id.* at 70–71. State officials, sued in their official capacities, are likewise not "persons" subject to a damages suit under section 1983. *Will*, 491 U.S. at 71 n.10; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

As stated above, the State and its employees are not "persons" under § 1983. It follows that, if the Essex County Prosecutor's Office and its employees (sued in their official capacities) were acting as an arm of the State when performing the acts of which plaintiffs complain, then they are not "persons" amenable to suit. If acting as local, county officials, however, they may be amenable to suit as "persons." *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 855 (3d Cir. 2014).

As the preceding paragraph implies, New Jersey county prosecutors sit uneasily astride the division between State and local entities. Sometimes they act in one capacity, and sometimes in the other:

> "[W]hen [New Jersey] country prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996). When county prosecutors perform administrative functions "unrelated to the duties involved in criminal prosecution," however, they act as county officials. *Id.* at 1505–06.

7

*Lagano*, 769 F.3d at 855; *see also Coley v. Cnty. of Essex*, 462 Fed.Appx. 157, 161 (3d Cir. 2011).

To simplify a bit, the prosecutor's staffing and administrative functions flow from the County. Thus, *Coleman* held that, when dealing with personnel matters, a county prosecutor's office acted in its administrative capacity as part of county government. It therefore was a "person" which could be sued under § 1983 for employment-related discrimination. 87 F.3d at 1500–01.

As to the core functions of enforcement of the criminal law, however, the county prosecutor acts as a State official. The prosecutor is a gubernatorially-appointed official of the State of New Jersey, pursuant to the State Constitution, who acts under the oversight of the State Attorney General. *Id.* Thus, where a county prosecutor and his detectives conducted an allegedly illegal search, they acted as part of the State government, because their conduct arose from their "investigation of criminal activity." *See Wright v. State*, 778 A.2d 443, 453 (N.J. 2001) (citing *Cashen v. Spann*, 311 A.2d 192 (N.J. Super. Ct. App. Div. 1973), *aff'd*, 334 A.2d 8 (N.J. 1975)). When performing such law enforcement functions, prosecutors act as State officials, and therefore are not "persons" amenable to suit under § 1983. *See Michaels v. State of N.J.*, 968 F. Supp. 230, 236 (D.N.J. 1997), *aff'd*, 150 F.3d 257 (3d Cir. 1998) (malicious prosecution action against County prosecutor and assistant prosecutors).

Here, the misconduct alleged against Semper in his official capacity arises from his prosecutorial functions. In essence, AP Semper is alleged to have knowingly used false testimony of Gilbert, Erby, and Oriolo before the grand jury. (AC ¶ 46). He is also alleged to have omitted exculpatory surveillance evidence. (*Id.* ¶ 47) In presenting evidence to the grand jury, Semper was discharging essential prosecutorial functions; it follows that he was acting as an arm of the State.

As such, AP Semper, in his official capacity, partakes of the State's Eleventh Amendment immunity and is not a "person" under § 1983. The

motion to dismiss the claims asserted in Counts 3, 4, 5 and 7 against Semper in his official capacity is therefore granted.

### b. Individual Immunity of Semper

Dismissal of official-capacity claims, however, is not the end of the story. The amended complaint is seemingly directed at Semper, not only in his official capacity, but also in his "individual capacity." (AC ¶ 10). An individual named as a defendant in his personal capacity is amenable to suit as a "person." *Lagano*, 769 F.3d at 856. It does not matter that he happens to be a government official, or that the acts for which he is sued happen to be official acts. *Hafer*, 502 U.S. at 27. His amenability to suit flows solely from the personal capacity in which he is sued.

A defendant sued in his personal capacity may assert individual defenses, such as immunity:

> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." [quoting *Kentucky v. Graham*, 473 U.S. at 166]. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.*, at 166–167.

*Hafer*, 502 U.S. at 25. And Assistant Prosecutor Semper asserts such defenses here. Semper maintains that he is immune from liability as this action arises as a result of his efforts to prosecute plaintiffs and present his case before the grand jury. (DBr. at 3–5). Plaintiffs counter that, regardless of Semper's immunity, he presented a case to the grand jury that he knew was false or misleading, and that therefore there is no legitimate reason to immunize him. (PBr. at 3–4).

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Court applied established common law principles of immunity to a Section 1983 action

9

against a prosecutor named Pachtman. Imbler, convicted of murder, was freed on habeas corpus based on findings that the State prosecutor had engaged in six culpable uses of misleading or false testimony, and had suppressed favorable fingerprint evidence. *Id.* at 414–15. Imbler sued the prosecutor and the police for damages under 42 U.S.C. § 1983, adding allegations that the prosecutor knew a polygraph test had cleared him, and had introduced at trial a police sketch that had been altered to more closely resemble Imbler. Pachtman moved to dismiss the case under Rule 12(b)(6), claiming prosecutorial immunity.

The Court reasoned that absolute immunity must apply. Damages actions against prosecutors, it held, should not "survive[ ] the pleadings," because a prosecutor must be unfettered in his or her duty to enforce the criminal law. *Id.* at 424–26. "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Id.* at 427.

*Imbler* limited the scope of absolute immunity, however, to activities "intimately associated with the judicial phase of the criminal process ... to which the reasons for absolute immunity apply with full force." *Id.* at 430. The effect of that limitation was to "leave standing those cases ... which hold that a prosecutor engaged in certain investigative activities enjoys, not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's." *Id.*

Absolute immunity, then, is confined to activities closely associated with the judicial system. It therefore requires a "functional analysis" of the particular task that the prosecutor is performing:

> Absolute immunity attaches to ... activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior "intimately associated with the judicial phases" of litigation. ... By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by

10

> qualified immunity. *Imbler*, 424 U.S. at 430–31; *Burns v. Reed*, 500
> U.S. 478 (1991). In addition, there may be instances where a
> prosecutor's behavior falls completely outside the prosecutorial
> role. *See Rose v. Bartle*, 871 F.2d 331, 346 (3d Cir. 1989). In that
> case, no absolute immunity is available.

*Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992).

Of course, malfeasance is no proper part of a prosecutor's role, but the analysis under *Imbler* is different. Immunity depends on the nature of the function, not the rightful or wrongful manner in which it is performed:

> To give examples of prosecutorial activities protected by absolute,
> as opposed to qualified, immunity, soliciting false testimony from
> witnesses in grand jury proceedings and probable cause hearings
> is absolutely protected. [citing *Burns v. Reed*, 500 U.S. 478 (1991)].
> Use of the false testimony in connection with the prosecution is
> absolutely protected. *See id.* at 1939 (eliciting false or defamatory
> statements from witnesses in a judicial proceeding was immunized
> at common law). Even interviews generating evidence to be
> presented to a grand jury are absolutely protected. [citing *Rose v.
> Bartle*, 871 F.2d 331 (3d Cir. 1989)] (prosecutor's solicitation of
> testimony for use in grand jury proceedings is "encompassed
> within 'the preparation necessary to present a case' and therefore
> [is] immunized as involving the prosecutors' advocacy functions.")
> (citation omitted).

*Kulwicki*, 969 F.2d at 1465. Also shielded by absolute immunity are claims based on failure to turn over exculpatory evidence. *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). What those immunity-protected functions have in common is that they involve the presentation of evidence to a court or grand jury, or closely-associated activities preparatory to doing so.[4]

---

[4] District Judge Arleo has usefully summarized the scope of activities protected by absolute prosecutorial immunity thus:

> Prosecutors also are absolutely immune from a civil suit for damages under §
> 1983 for: (1) instituting grand jury proceedings without proper investigation
> and without a good faith belief that any wrongdoing occurred, *Schrob*, 948 F.2d
> at 1411; *Rose v. Bartle*, *supra*; (2) initiating a prosecution without a good faith
> belief that any wrongdoing has occurred, *Kulwicki*, 969 F.2d at 1463–64; (3)
> soliciting false testimony from witnesses in grand jury proceedings, probable
> cause hearings, and trials, *Burns*, 500 U.S. at 490; *Kulwicki*, 969 F.2d at 1467;
> and (4) the knowing use of perjured testimony in a judicial proceeding, *Imbler*,

11

The law concerning prosecutorial immunity is well settled and necessitates dismissal of plaintiffs' claims against AP Semper. As noted above, the amended complaint alleges misconduct in connection with presenting a case to the grand jury. Specifically, Semper is alleged to have used perjured statements before the grand jury and withheld exculpatory surveillance evidence from the grand jury. (AC ¶¶ 46–49). Whether performed properly or not, these are core prosecutorial functions that are shielded by absolute immunity.

Assistant Prosecutor Semper is therefore absolutely immune. As to defendant AP Semper, sued in his personal capacity, Counts 3, 4, 5 and 7 are dismissed in their entirety.

## IV. Discussion: State-law Claims

### a. NJCRA

Claims under the New Jersey State Constitution are interwoven with the federal constitutional claims, and they stand or fall together. The § 1983 claims in the complaint make reference to the New Jersey State Constitution, and therefore may be viewed in the alternative as claims under the New Jersey Civil Rights Act ("NJCRA"). The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011); *see also Chapman v. N.J.*, No. CIV. 08-4130(AET), 2009 WL

---

424 U.S. at 424–27; *Schrob*, 948 F.2d at 1417; *Brawer v. Horowitz*, 535 F.2d 830 (3d Cir. 1976). "[A]bsolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted) (further holding that a supervisory prosecutor is absolutely immune for failing to adequately train and supervise district attorneys on the duty not to withhold impeachment evidence and the failure to create any system for accessing information pertaining to the benefits provided to jailhouse informants). A falsely-charged defendant may be "remedied by safeguards built into the judicial system," such as dismissal of the charges. *Kulwicki*, 969 F.2d at 1464.

*Desposito v. New Jersey*, 2015 WL 2131073, at *6 (D.N.J. May 5, 2015).

2634888, at *3 (D.N.J. Aug. 25, 2009)) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983.").

The NJCRA, like § 1983, grants a cause of action against "a *person* acting under color of law." N.J. Stat. Ann. § 10:6–2 (emphasis added). Under NJCRA, as under § 1983, a "person" does not include the State of New Jersey. *Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012) (citing definition of "person" in N.J. Stat. Ann. § 1:1–2, which excludes the State except in certain property disputes not relevant here).

Likewise, this Court has applied the absolute prosecutorial immunity principles of *Imbler* to claims under the NJCRA. Here are a few recent examples: *Alexander v. Borough of Pine Hill*, No. 117CV6418NLHKMW, 2018 WL 2215515, at *4 (D.N.J. May 15, 2018) (NJCRA "coterminous with" § 1983 for purposes of absolute prosecutorial immunity); *Frost v. Cty. of Monmouth*, No. 3:17-CV-4395-BRM-DEA, 2018 WL 1469055, at *8 (D.N.J. Mar. 26, 2018) (applying prosecutorial immunity analysis in parallel to claims under § 1983 and NJCRA); *Simmons v. Roxbury Police Dep't*, No. 17-2526, 2017 WL 5188060, at *11 (D.N.J. Nov. 9, 2017) (applying absolute prosecutorial immunity to a plaintiff's NJCRA claim).

On these additional grounds, then, Counts 3, 4, 5 and 7, viewed as NJCRA claims, will be dismissed. *See B.D. v. Bd. of Educ. of the Greater Egg Harbor Reg'l High Sch. Dist.*, 2015 WL 4508303, at *4 n.6 (D.N.J. July 24, 2015).[5]

### b. Common law tort claims

Defendant Semper is also named in three state common law tort claims: Count 4 (Malicious Prosecution), Count 5 (Intentional Infliction of Emotional Distress), and Count 7 (Defamation).

---

[5] In the alternative, even if the complaint stated a claim under the NJCRA, the court would decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c); Section IV.B, immediately following.

13

For the reasons expressed above, the amended complaint contains no viable federal cause of action against AP Semper. When a court has dismissed all claims over which it had original federal-question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over any remaining state-law claims. *See* 28 U.S.C. § 1367(c); *see also Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). Where, as here, the federal claims are dismissed at the early, Rule 12(b)(6) stage of litigation, declination of supplemental jurisdiction is fairly routine. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). This case is in its early stages, and discovery has been stayed. The federal claims are insubstantial. The state tort claims asserted against defendant Semper (Counts 4, 5, and 7) are therefore dismissed without prejudice on jurisdictional grounds.

## V. Conclusion

For the reasons set forth above, the motion of defendant Semper to dismiss the complaint (DE 39) is **GRANTED**. The dismissal of the federal and NJCRA claims is with prejudice, as amendment would be futile. The remaining state law claims are dismissed without prejudice on jurisdictional grounds. The remaining Counts are dismissed as against defendant Semper only, as they either are not directed at him or they state only remedies which would depend on the viability of some underlying cause of action. An appropriate order follows.

Dated: November 18, 2019

Kevin McNulty
**United States District Judge**

14